294 S.E.2d 94

**James Edward MOORE**

v.

**Dorothy Allen MOORE (now Dorothy Allen Bailey).**

**No. 15541.**

Supreme Court of Appeals of West Virginia.

June 28, 1982.

---

Bowles, McDavid, Graff & Love, Carl D. Andrews and Sarah E. Smith, Charleston, for appellant.

John N. Charnock, Jr., Charleston, for appellee.

PER CURIAM:

This is an appeal by Dorothy Allen Moore (now Dorothy Allen Bailey) from an order of the Circuit Court of Kanawha County transferring custody of her nine-year-old son to her former husband, James Edward Moore. The appellant argues that the evidence adduced during the proceedings in the case failed to establish circumstances justifying a change of custody and that the court's decision was contrary to the law and evidence. We disagree, and we affirm the decision of the Circuit Court of Kanawha County.

By order dated September 4, 1974, the appellant was divorced from James Edward Moore and was awarded custody of the couple's four children. James Edward Moore was granted visitation privileges. Later custody of two of the children who are not directly involved in this proceeding, Kathy and Jeffrey, was transferred to James Edward Moore.

On January 19, 1982, James Edward Moore petitioned the Circuit Court of Kanawha County to modify its prior divorce decree and to award him custody of his nine-year-old son, Michael Edward Moore.

Extensive hearings were conducted before a special commissioner to determine whether a change of custody of the nine-year-old child was warranted. During the hearings evidence was introduced showing that both the appellant and James Edward Moore had established decent homes and that they had provided adequately for the child when he was in their care. The appellant had remarried, and the evidence, though somewhat conflicting, indicated that her new husband was a stern disciplinarian. There was evidence that the appel-

lant and her new husband had on a number of occasions whipped the nine-year-old child with a belt to the extent that his body was bruised. There was also evidence that the stepfather's sons, who were older than Michael Edward ·Moore, picked on him and mistreated him. Kathy Moore, the appellant's eighteen-year-old daughter, testified as follows:

"Q. Have you ever observed any treatment by Bernard (the step-father) toward Michael while you were present in the home?

A. Whenever he got mad at the kids, you know, he would do something like grab them by the arm. I saw him kick them a lot, he'd hold on to them and kick them.

Q. Where would he kick them?

A. In the legs, the seat of the pants, things like that.

Q. How hard would he kick them?

A. Well, I don't know. He wasn't playing around. It was enough to hurt them.

Q. What effect, if any, did this have on Mike?

A. It scared him to death, you know, they didn't know what to do.

Q. Did this happen on more than one occasion?

A. Yes.

Q. Do you feel Mike could live in the home in St. Albans now?

A. No. He's scared to death that he has to go back down there and live. I don't blame him."

Michael Moore himself testified on two occasions, once while staying with his father and once after staying with his mother. On both occasions he indicated that he preferred to live with his father.

At the conclusion of the hearings the commissioner found that a change of custody would be to Michael Moore's benefit, that it would remove him from competition with his stepbrothers and that it would place him in a home with his own brother Jeffrey whose custody had previously been transferred to James Edward Moore.

After receiving the commissioner's report, the circuit court adopted the commis-sioner's conclusions and ordered that custody of the child be transferred to James Edward Moore. On appeal the appellant argues that the evidence adduced did not support a change of custody and that the trial court erred in adopting the commissioner's findings.

■ In cases involving change of child custody we have repeatedly recognized that:

"To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." Syllabus point 2, *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977).

*See, Horton v. Horton,* 164 W.Va. 358, 264 S.E.2d 160 (1980); *Jeffries v. Jeffries,* 162 W.Va. 905, 253 S.E.2d 689 (1979); *Holstein v. Holstein,* 152 W.Va. 119, 160 S.E.2d 177 (1968); *Pugh v. Pugh,* 133 W.Va. 501, 56 S.E.2d 901 (1949).

■ In the case before us the trial court found that a change in custody would benefit the child. Our rule regarding such findings is:

"The findings of the trial chancellor, based on conflicting evidence, will not be disturbed on appeal unless such findings are clearly wrong or against the preponderance of the evidence." Syllabus point 4, *Ball v. Ball,* 154 W.Va. 739, 179 S.E.2d 221 (1971); Syllabus point 5, *Lieberman v. Lieberman,* 142 W.Va. 716, 98 S.E.2d 275 (1957); *see, Witt v. Witt,* 141 W.Va. 43, 87 S.E.2d 524 (1955).

■ It is clear from the record before us that there was a change in the circumstances of the parties. The appellant remarried and established a home which included her new husband and stepchildren. It also appears that Michael Moore experienced problems adjusting to the altered situation. We believe that there was sufficient evidence in the record for the trial court to have concluded that there was a change in the circumstances of the parties and that a change of custody would materially promote the welfare of the child. Giv-

en this, Syllabus point 4 of *Ball v. Ball, supra*, dictates that the judgment of the circuit court be affirmed.

Accordingly, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.